Michael A. Taibi, Esq. SBN 160041
TAIBI & ASSOCIATES, A.P.C.
750 "B" Street, Suite 2510
San Diego, CA 92101
Tel: (619) 354-1798   Fax: (619) 784-3168
Email: matlaw1@ymail.com

Attorney for the Plaintiff ROY MASON

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY MASON | CASE NO.  '18 CV 2655 WQH KSC |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF AMERICAN'S WITH DISABILITIES ACT; UNRUH CIVIL RIGHTS ACT; NEGLIGENCE |
| vs. | |
| IRISH TIMES LLC dba DUBLIN SQUARE IRISH PUB & GRILL, GASLAMP PORTFOLIO MANAGEMENT LLC and DOES 1-10, INCLUSIVE. | |
| Defendants. | |

Plaintiff, ROY MASON, (hereinafter referred to as "Plaintiff"), files his causes of action within this Civil Complaint against Defendant(s), IRISH TIMES LLC dba DUBLIN SQUARE IRISH PUB & GRILL, GASLAMP PORTFOLIO MANAGEMENT LLC, (Herein known as "Defendants") and DOES 1 through 10, Inclusive, and would show unto the Court the following:

# I. JURISDICTION AND VENUE

1.     This Court has original jurisdiction regarding this matter pursuant to 28 U.S.C. Section 1331 and 1343(a)(3) and (a)(4) for claims arising under the Americans with Disabilities act of 1990, 42 USC Section 12101, et seq.

2.     Pursuant to pendant jurisdiction, an attendant and related cause of action, arising from the same center of operative facts; and, arising out of the same transactions this matter is also brought under California's Unruh Civil Rights Act Civil Code Section 51, and the California Disabled Persons Act, and the Disabled Persons Act, Civil Code Section 54, et seq., which expressly incorporates under common law theories and for injunctive relief.

3.     Venue is proper in this court pursuant to 18 U.S.C. Section 1391(b) and is founded on the fact that the real property and business location, which is the subject of this action and located in the District where the Plaintiff's cause(s) of action arose.

4.     All causes of action based on Federal law and those based on State law, as states, arose from a commonality of operative facts.  Plaintiff was denied equal access to Defendants facility, goods, and services in violation of both Federal and State laws or was and/or was injured due to violations of the afore-referenced access laws.  The State causes of action included in Plaintiff's complaint are

related to the Federal causes of action as they derive from the same controversy.

Therefore, the issues are best tried in one judicial proceeding.

Plaintiff also brings forth the action as a private Attorney General under State law to enforce important rights of all similarly disabled persons. Therefore, the Plaintiff acted as a private Attorney General, through his attorney, to enforce the Federal Regulations and applicable California Codes to ensure that IRISH TIMES LLC dba DUBLIN SQUARE IRISH PUB & GRILL ("DUBLIN SQUARE") is accessible for all disabled persons and not just himself.

## II. PARTIES

5.    Plaintiff alleges that Defendants are, and at all times mentioned, were a business, corporation or franchise organized and existing and/or doing business under the laws of the State of California, IRISH TIMES LLC dba DUBLIN SQUARE IRISH PUB & GRILL, GASLAMP PORTFOLIO MANAGEMENT LLC, located at 554 Fourth Avenue, San Diego, CA 92101 (herein sometimes known as "property"). Plaintiff alleges that Defendant is, and at all times was, the owner/operator, lessee or lessor of the facility located at the property.

6.    Plaintiff alleges that DOES 1 through 10 were at all times relevant lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principals and/or representatives of Plaintiff. Plaintiff is unaware of the true names and capacities of Defendants

sued herein, as DOES 1 through 10, inclusive, and therefore, sues those

Defendants by fictitious names.  Plaintiff requests that the Court grant leave to

amend this complaint to allege the true names and capacities when determined by

whatever source.  Defendant and DOES 1 through 10 are hereinafter collectively

referred to as "Defendants".

7.      Plaintiff alleges that Defendants at all times have been and are

relevant to this cause of action, the owners, franchisees, lessees, general partners,

limited partners, agents, employees, employers, representing partners, subsidiaries,

partner companies, joint ventures and/or divisions of the remaining Defendants and

were acting within the course and scope of that relationship.  Plaintiff is further

informed and believes, and therefore alleges that each of the Defendants gave

consent to, ratified, and/or authorized the acts alleged of each of the remaining

defendants.

8.      Plaintiff is a qualified individual with a disability as provided by the

Americans with Disabilities Act of 1990, 42 USC Section 12102, and the

California Unruh Civil rights Act, Sections 51, et seq. and 52, et seq., the Disabled

Persons Act, Sections 54, et seq., Govt. Code, Sections 12926, and other statutory

measures that refer to the protection of the rights of "physically disabled persons".

Plaintiff visited the public accommodations owned and operated by Defendants

with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, or accommodations operated and/or owned by Defendants.

### III. FACTS

9.      Plaintiff alleges that the subject facility has been newly constructed and/or underwent remodeling, repairs, or alterations since 1992, and that Defendants have failed to comply with California access standards which applied at the time of each such new construction and/or alteration or failed to maintain accessible features in operable working condition.

10.      Plaintiff is mobility impaired and uses a wheelchair.  He has been classified as having a physical impairment, as required by 42 USC Section 12102(2)(A) and requires a wheel chair for mobility and to gain access to public establishments.

11.      On or about November 21, 2017, Plaintiff was denied full and equal access to IRISH TIMES LLC dba DUBLIN SQUARE IRISH PUB & GRILL ("DUBLIN SQUARE"), owned and/or operated by the Defendants because the property was inaccessible to individuals belonging to the disabled community who use wheel chairs for mobility. Full accessibility was denied due to a lack of access to the premises. DUBLIN SQUARE is a restaurant facility, a business open to the public, a place of public accommodation, and a business establishment open to the public.

When Plaintiff attempted to gain access to the seating located in the outside dining area of the business, but he was not able to do so. Plaintiff asked an employee if there was outside seating available for disabled persons. He was told there is no additional or alternative seating. Plaintiff found no designated or alternative outside seating available for disabled person(s) confined to a wheelchair at the time of his visit to the DUBLIN SQUARE.

Plaintiff's wheelchair must be able to fit under the table without the barriers of four-legs attached to the table, the table must be high enough to accommodate his wheelchair, and there must be clear accessibility around the table for him to be able to maneuver the wheelchair. Therefore, Plaintiff was unable to gain full use of the outside dining area and, therefore, was barred from full access to the facilities. He was unable to enjoy the facilities to which a disabled person is entitled.

Defendants are required to make the facilities available to disabled persons and must make any repairs necessary to accommodate these individuals. When Plaintiff attempted to gain access to the seating located in the outside dining area of the business, but he was not able to do so. Plaintiff asked an employee if there was outside seating available for disabled persons. He was told there is no additional or alternative seating. Plaintiff found no designated or alternative

outside seating available for disabled person(s) confined to a wheelchair at the time of his visit to the DUBLIN SQUARE.

Plaintiff's wheelchair must be able to fit under the table without the barriers of four-legs attached to the table, the table must be high enough to accommodate his wheelchair, and there must be clear accessibility around the table for him to be able to maneuver the wheelchair. Therefore, Plaintiff was unable to gain full use of the outside dining area and, therefore, was barred from full access to the facilities. He was unable to enjoy the facilities to which a disabled person is entitled.

Defendants are required to make the facilities available to disabled persons and must make any repairs necessary to accommodate these individuals. DUBLIN SQUARE is currently in violations of ADA and UNRUH requirements to accommodate disabled individuals. is currently in violations of ADA and UNRUH requirements to accommodate disabled individuals.

When Plaintiff attempted to gain access to the counter area of the business, but he was not able to do so. Plaintiff asked an employee if there was counter seating available for disabled persons that would accommodate his wheelchair. He was told there is no additional or alternative counter seating. Plaintiff found no designated or alternative counter seating available for disabled person(s) confined to a wheelchair at the time of his visit to the DUBLIN SQUARE.

Plaintiff's wheelchair must be able to fit under the counter without barriers, the counter must be high enough to accommodate his wheelchair but low enough to set his food and drink upon, there must be clear accessibility around the counter for him to be able to maneuver the wheelchair.  Therefore, Plaintiff was unable to gain full use of the counter seating and, therefore, was barred from full access to the facilities.  He was unable to enjoy the facilities to which a disabled person is entitled.

Defendants are required to make the facilities available to disabled persons and must make any repairs necessary to accommodate these individuals.  DUBLIN SQUARE is currently in violations of ADA and UNRUH requirements to accommodate disabled individuals.

When Plaintiff attempted to gain access to the restroom area of the business, but he was not able to do so.  When he attempted to removed one of the toilet seat covers from the dispenser it was too high for him to reach.  Plaintiff asked an employee if there were another other restroom available for disabled persons.  He was told there is no additional or alternative restroom.  Plaintiff found no designated or alternative restroom available for disabled person(s) confined to a wheelchair at the time of his visit to the DUBLIN SQUARE.  Therefore, Plaintiff was unable to gain full use of the restroom and was barred from full access to the

facilities.  He was unable to enjoy the facilities to which a disabled person is entitled.

Defendants are required to make the facilities available to disabled persons and must make any repairs necessary to accommodate these individuals and is currently in violations of ADA and UNRUH requirements to accommodate disabled individuals.

On or about November 21, 2017, the Plaintiff mailed a letter to the DUBLIN SQUARE advising that he was unable to gain access to the facility due to the lack of accessibility in the in the outside patio area.  (See Exhibit "A" Attached).

Plaintiff desires to return and patronize but is barred from fully accessing the premises until Defendant(s) cure the violations.  Plaintiff occasionally patronizes business in the immediate area and he would like to return and patronize the Saffron Thai in the future.

Defendants are required to modify any discriminatory policies, practices and procedures to avoid discriminating against people with disabilities, including Plaintiff.

12.     Defendants' discrimination caused Plaintiff to suffer harmful injuries including difficulty, discomfort and embarrassment.

13.     The harmful conduct of Defendants has and will cause great and irreparable injury to Plaintiff in that Defendants' failure to provide full and equal

access to individuals with disabilities, including those to Plaintiff, denies Plaintiff

access the facilities at the Saffron Thai  and, therefore, is in violation of the ADA

Accessibility Guidelines and/or California Title 24 Building Code requirements,

and/or other applicable Codes, statutes and/or other regulations.

14.    Plaintiff alleges that Defendants have continued to operate a business

open to the public which is inaccessible to him and other individuals with

disabilities.  Pursuant to 42 USC Section 12188(a), Defendants are required to

remove barriers to their existing facility.  Plaintiff further alleges that removal of

the barriers described in this complaint is readily achievable and can be removed

with minimal difficulty or expense.  Or, equivalent facilities may be provided

without much difficulty or expense.  Defendants are also required to modify any

discriminatory policies, practices and procedures to avoid discriminating against

people with disabilities, including Plaintiff.

Plaintiff's attorney retained the services of WILLIAM CARTER an ADA

Specialist, to inspect the property and write a report of violations and provide

photos.  A detailed report with photos was prepared and filed with this complaint.

(See attached as Exhibit "B")

15.    Plaintiff alleges that the discriminatory policies, practices and

procedures, precluding him and other disabled persons from full access of the

public accommodations will continue to exist for any future visits, which will

result in future discrimination of Plaintiff and other disabled persons in violation of the Americans with Disabilities Act.

## IV.  FIRST CLAIM FOR VIOLATION
## OF AMERICANS WITH DISABILITIES ACT
## 42 USC SECTION 12101, et seq.

16.    Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 15, inclusive as set forth herein.

17.    Plaintiff was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased and/or operated by Defendants, in violation of 42 USC Section 12182(a).  Therefore, Plaintiff was subjected to discrimination and is entitled to injunctive relief pursuant to 42 USC Section 12188 as a result of the actions or inaction of Defendants.

18.    Among other remedies, Plaintiff seeks an injunctive order requiring compliance with state and federal access laws for all access violations that exist at the property, requiring removal of architectural barriers and modification of policies, practices, and procedures, and other relief as the Court may deem proper.

19.    Plaintiff also seeks any other order that will redress the discrimination to which he has been subjected, is being subjected and/or will be subjected.

## V.  SECOND CLAIM FOR VIOLATION
## OF CALIFORNIA CIVIL CODE

20.    Plaintiff alleges and incorporates by reference each allegation contained in paragraph 1 through 19, inclusive as set forth herein.

21.    Plaintiff alleges that based on the facts placed in this complaint, Defendants did, and continues to, discriminate against Plaintiff and persons similarly situated by denying disabled persons full and equal access to the facility to purchase goods, services, facilities, privileges, advantages or accommodations within a public accommodation, in violation of California Civil Code Sections 51 and 54, et seq.

22.    Plaintiff alleges that Defendants' actions constitute a violation of Plaintiff's rights under California Civil Code Sections 51 and 54, et seq., and therefore, entitling him to damages under California Civil Code Section 54.3 for each offense.  Plaintiff suffered difficulty, discomfort and embarrassment because of his denial to full and equal access as stated above.  The amount of damages suffered by plaintiff is not yet determined.  When the amount is determined, Plaintiff will ask the Court for leave to amend this complaint to reflect this amount. Plaintiff is also entitled to attorneys' fees and costs.

23.    The actions of Defendants were and are in violation of the Unruh Civil Rights Act, California civil Code Sections 51 and 54, et seq., therefore entitling Plaintiff to damages suffered by him under civil code section 52 for each offense.  The amount of damages suffered by plaintiff has not yet been determined.

When the amount has been determined, Plaintiff will ask the court for leave to amend this complaint to reflect this amount.  In addition, the Plaintiff is entitled to attorneys' fees and costs.

24.   The actions of Defendants are in violation of the California Civil Code Sections 51, et seq. as they were willfully, deliberate and reckless in nature for the rights of disabled persons including Plaintiff.  Therefore, Plaintiff is entitled to punitive and exemplary damages or treble damages pursuant to California Civil Code Sections 52 and 54.3, et seq. and under common law principles.

25.   Plaintiff seeks all of remedies available to him under Civil Code Sections 51, 52, et seq., 54, 54.1, 54.2, 54.3, and any other Civil code sections that provide remedies for the discrimination suffered by Plaintiff, including damages and attorneys' fees

## VI.  THIRD CLAIM FOR NEGLIGENCE PER SE

26.   Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 25, inclusive as set forth herein.

27.   At all times relevant herein, there was in effect the Americans with Disabilities Act, California Civil Code Sections 51 and 54, et seq., all of which require that public accommodations and facilities provide services to people with disabilities that are equal and not inferior to the services provided to patrons who are not physically disabled.

28.     Defendants owe Plaintiff a mandatory duty to provide him full and equal access to accommodations, advantages, facilities, privileges and services of all business establishments.  Plaintiff is a member of the class of individuals who are protected under these statutes.

29.     Defendants' acts or omissions alleged by Plaintiff are a violation of statutory requirements including, the Americans with Disabilities Act, California Civil Code Sections 51 and 54, et seq. and public policy, therefore constituting negligence per se.

30.     As a proximate result of the actions or inactions of Defendants, Plaintiff has suffered the harms that these statutes are designed to prevent.

31.     Plaintiff requests special and general damages as well as statutory damages according to proof, as described herein.

## VII.  FOURTH CLAIM FOR NEGLIGENCE

32.     Plaintiff alleges and incorporates by reference each allegation stated in paragraphs 1 through 31, inclusive as set forth herein.

33.     Defendants have a duty to exercise ordinary and reasonable care as set forth above.

34.     Defendants have failed to exercise ordinary and reasonable care as set forth above.

35.     As an actual and proximate result of Defendants' failure to exercise ordinary and reasonable care, Plaintiff suffered general and special damages.

36.     As actual controversy exists, Plaintiff alleges that Defendants' property is in violation of the disabled access laws of the state of California including Civil Code Sections 51, 52, and 54, et seq., and Title III of the Americans with Disabilities Act and Accessibility Regulations.

## VIII.  FIFTH CLAIM FOR DECLATORY RELIEF

37.     Plaintiff alleges and incorporates by reference each allegation in paragraphs 1-36, inclusive, as though set forth fully herein.

38.     A controversy exists as Plaintiff alleges that Defendants' premises are in violation of the disabled access laws of the state of California including, but not limited to, Civil Code Sections 51, 52, and 54 et seq., and Title III of the Americans with Disabilities Act and accessibility Regulations.

## IX.  SIXTH CLAIM FOR INJUNCTIVE RELIEF

39.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 38, inclusive, as set forth herein.

40.     Plaintiff will suffer irreparable harm unless Defendants are ordered to remove architectural barriers at Defendants' public accommodation, and/or to modify their policies, practices, and procedures regarding accommodating people

with disabilities, Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendants.

41.     Plaintiff seeks injunctive relief to redress his injuries.

## JURY TRIAL DEMAND

Plaintiff hereby requests a Jury Trial in this matter.

## CONCLUSION

WHEREFORE, Plaintiff prays for a judgment against the Defendants, IRISH TIMES LLC dba DUBLIN SQUARE IRISH PUB & GRILL, GASLAMP PORTFOLIO MANAGEMENT LLC, and DOES 1 through 10.

1.     An order enjoining Defendants from violating disabled access laws of the United States and of the State of California.

2.     An order that the Court declare the respective rights and duties of Plaintiff and Defendant(s) as to the removal of architectural barriers at defendants' public accommodation and/or as to the modification of discriminatory policies, practices, and procedures.

3.     Injunctive relief, compelling Defendant(s) to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.

4.     An order awarding plaintiff actual, special and/or statutory damages for violations of his civil rights and for restitution including, but not limited to $4,000.00 in damages for each and offense in violation of Civil Code section 51, and/or $1,000.00 for each offense in violation of Civil Code Section 54, et seq. and

for each occasion upon which Plaintiff was denied or deterred from availing himself of Defendant's facilities, good and services.

5.    An order awarding punitive and exemplary damages according to proof.

6.    An order awarding up to three times the amount of actual damages pursuant to the Unruh Civil Rights Act and the Disabled Persons Act.

7.    An order awarding Plaintiff reasonable attorney fees and costs.

8.    An order awarding such other relief as the Court deems proper.

Dated:  November 20, 2018          /s/ Michael A. Taibi, Esq.
                                   MICHAEL A. TAIBI, Esq.
                                   Attorney for Plaintiff
                                   ROY MASON

# EXHIBIT "A"

November 21, 2017


DUBLIN SQUARE IRISH PUB AND GRILL
554 4TH AVENUE
SAN DEIGO, CA 92101


RE: Notice of Intent to File Lawsuit


Dear Business Owner:

I have visited your business and it is in violation of the Americans with
Disabilities Act.

I am in a wheelchair. There are no seats at the counter for persons in
wheelchairs. I was denied access to sit at all of your counter seating areas
because the counters were too high and I was unable to reach the top of the
counter and eat or drink with comfort.

There should be at least a 60" wide by 19" deep clear space at the counter
for people in wheelchairs.

The Ada sections that apply are Sections:
Counter Height 28"-34"-ADA 4.32.4, CA Title 24 1122B.4,
Knee Space 27"H, 30"W, 19"D- ADAAG 4.32..3 & 4 & CA Title 24
1122B.3, Counters – Dining, Banquet & Bar Facilities – Clear Floor Space
30" x 48" Min, ADAAG 4.2.4, 4.32.2 & CA Title 24 1122B.3,
Clear Space adjoins Accessible Route - ADAAG 4.2.4.2, 4.32.2 & CA Title
24 1122B.3,
Counters – Counter Height 28"-34", CA Title 24 1122B.4,
Clear Space 36" Wide - CA Title 24 1122B.3 & .4,
Clear Space 3o" x 48"- CA Title 24 1188B.4.2, ADA 4.2.4.2,
Clear Space adjoins Accessible Route - CA Title 24 1122B.3 & .4.

I asked if there are any other counter seating areas at this facility and I was told there were no other counter seating areas with the above specifications at this facility and this is the only counter seating arrangement they have had in the past and that this was permanent counter seating.

Please add counter seating for persons in wheelchairs to sit at your table.

There is no outside seating for persons in wheelchairs. I was denied access to sit at all of your tables because there was no clear space, under the table, to allow room for my knees and feet, without hitting the pole stand, under the table.

There should be at least 19" deep and 30" wide of clear space from the end edge of the table to any pole stand under the table.

The Ada sections that apply are Sections:

Minimum Requirement 5% - CA Title 24 1122B.1, ADA 4.1.3(18),
Clear Space 30" x 48" Min - CA Title 24 1118B.4.1, ADA 4.2.4.1,
Knee Space 27"H, 30"W, 19"D – ADAAG 4.32.3 & CA Title 24 1122B.3,
Table Height 28"-34" - ADAAG 4.32.4 & CA Title 24 1122B.4,
Seating Access Aisles Min Width 36" - CA Title 24 1122B.1,  ADA 4.1.3(18),
Equivalent Services & Décor @ Accessible Seating - ADAAG 5.4 & CA Title 24 1104B.5.4,
Accessible Seating Integrated  w/General Seating - CA Title 24 1122B.1, ADA 4.1.3(18)

I asked for a table that was accessible and I was told there were no other tables with the above specifications at this facility and this is the seating arrangement they have always had in the past. Please add a seat for persons in wheelchairs to sit at your table.

The toilet seat covers are too high, which violates Ada Section ADAAG 4.23.7 & CA Title 24 1115B.9.2.

If I do not hear from you within 60 days of today's date, in writing, I may file a lawsuit against your facility.

Sincerely,

**ROY MASON**
4751 CASTANA ST
SAN DIEGO, CA, 92102

# EXHIBIT "B"



**DAOLIAM INTERNATIONAL**

# DAOLIAM INTERNATIONAL

## AMERICANS WITH DISABILITIES ACT (ADA)
## ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

This survey report addresses compliance with ADA Title III readily achievable accessibility guidelines. The information contained herein is an interpretation of the combined codes, regulations and laws of both, (State and Federal), California Title 24 and ADAAG, requirements for complying with disabled accessibility guidelines.

The definition of a place of public accommodation is covered under Title III. There are 12 categories of facilities represented in the statutory definition of public accommodation in section 301(7) of the ADA. The facility surveyed falls under one of the following Categories: Restaurants, Bars, Hotels, Lodges, Theaters, Shopping Centers, Malls, Retail Stores, Museums, Libraries, Parks, Private Schools, Day Care Centers, and Other Similar Places of Public Accommodations.

ADAAG REPORT DATE:   SEPTEMBER 13, 2018

ADAAG SURVEY OF:   DUBLIN SQUARE IRISH PUB AND GRILL
554 4TH AVENUE
SAN DEIGO, CA 92101


ADAAG SURVEY INVESTIGATION REPORT PERFORMED BY:

WILLIAM CARTER, D.A.C.E.   _____
Signature

REPORT ISSUED TO:   MICHAEL A TAIBI, ESQ, SBN:160041
TAIBI AND ASSOCIATES, APC
750 B STREET, SUITE 2510
SAN DIEGO, CA 92101
Telephone:   (619) 354-1798

DAOLIAM INTERNATIONAL

## TABLE OF CONTENTS

I.  Introduction........................................................................................................3
    A. Daoliam International

II.  Scope of Survey ..............................................................................................4
     A. Facility – Existing Facility
     B. Safe Harbor – Element by Element
     C. 1991 vs 2010 ADA & Title 24 Standards

III.  Methodology.....................................................................................................8

IV  Copyright Act of 1976.......................................................................................9

V  Total Number of Violations...............................................................................10

VI  Report Findings:
    A.    Accessible Entry
          1. Parking Areas....................................................................13
          2. Walks, Curbs & Ramps......................................................13
          3. Entrances, Corridors & Stairs.............................................13
    B.    Access to Goods & Services
          1. Dining, Banquet and Bar Facilities......................................14
    C.    Access to Restrooms
          1. Public Restrooms...............................................................25
    D.    Any Other Measures Necessary
          1. Public Telephones & Water Fountains..............................37
          2. Hazards & Emergency Procedures...................….................37
          3. Controls………………………………………………………...37
          4. Elevators...........................................................................37

VII  Prior History of ADA Complaints or Litigation..........................................37

VIII  List of Business/Tenants within the facility deemed to be in Non Compliance........37

**AMERICANS WITH DISABILITIES ACT (ADA)**
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

## I.    INTRODUCTION

DAOLIAM INTERNATIONAL

Daoliam International's, "Mission" under the Americans with Disabilities Act (ADA) Accessibility Survey For A Title III Entity, is to provide project compliance architectural and management consulting services to individual businesses and governmental agencies interested in bringing about compliance with the Americans with Disabilities Act (ADA) and Federal Laws, to build a partnership between the physically challenged disabled persons and the business communities, and to promote a full and unrestricted participation in society for persons with disabilities. Daoliam International is able to accomplish the above through various mediums such as Education, Mediation and Litigation.

Employees and or Agents of Daoliam International have provided ADA project compliance, architectural and management consulting services to the following, but not limited to, entities:  San Diego International Airport, San Diego Port Authority, HMS Host, General Dynamics, Home Savings of America, Wells Fargo Bank, Greyhound Bus Station, Marriott Hotel, Brown Field, Montgomery Field, Restaurants, Bars, Hospitals, Medical Facilities, Retail Department Stores, Commercial Office Buildings, etc.

In addition, Daoliam International's President, William Carter, has Experience and/or Degrees/Licenses in the following fields:  Mechanical Engineering, Civil Engineering, Drafting Engineering, Construction, Demolition, Retro-Fit Bridges, Joint Seal Bridges & Buildings, Energy Conservation Analysis, Design of ADA Spec Homes, Manufactured Homes, Import/Export various Goods/Services and Law.

William Carter, Disabled Accessibility Compliance Expert, has performed thousands of ADA Surveys/Reports in the 8th and 9th Circuit.  William's expertise in the interpretation of the legal and technical provisions of disabled accessibility standards is regularly utilized by law firms for the resolution of complaints, alleged issues of non-compliance and lawsuits. He has provided expert opinion to help solve 100's of cases.

The information contained herein represents Daoliam International's interpretation of the combined codes and laws regulating both State of California and the Federal requirements for complying with disabled accessibility guidelines.  Though Daoliam International has made a good faith effort to provide you with the latest and most accurate information available, the information contained in this report is subject to change without notice and does not represent a commitment on the part of Daoliam International as the field of disabled accessibility remains to be a dynamic and constantly changing domain, changes are periodically made in this field. Final verification and approval for each project must be secured from respective regulatory authorities.

## II. SCOPE OF SURVEY
======================================================================

======================================================================
## A. EXISTING FACILITY

This facility is a restaurant.   Section 42 USC 12818(7)(a-g) provides that a restaurant or other place which sells food or drink is a public accommodation.  This is a survey of the restaurant, restrooms and parking lot.

This facility appears to have been built prior to the enactment of the ADA (1992 Effective Date.  This building appears not to be an altered existing facility as defined under the ADA.  There are no visible exterior or interior tenant improvements, relating to the facility.

Under Department of Justice (DOJ) Title III, Technical Manual III-4.4200, 28 CFR 36.201; 28 CFR 36.203; 28 CFR 36.304; 28 CFR 36.305, "The ADA establishes different standards for existing facilities, altered facilities and new construction.    In existing facilities, where retrofitting may be expensive, the requirement to provide access is less stringent than it is in new construction and alterations, where accessibility can be incorporated in the initial stages of design and construction without a significant increase in cost."

Since January 26, 1992, Architectural barriers must be removed in a public area of an existing facility when said removal is **"readily achievable"**, when it is easily accomplished and can be carried out or performed without much difficulty or expense.

The Department of Justice regulation contains a list of 21 examples of modifications that may be readily achievable:

1.  Installing ramps; (3.6.1)

2.  Making curb cuts in sidewalks and entrances; (3.6.2)

3.  Repositioning shelves; (3.6.3)

4.  Rearranging tables, chairs, vending machines, display racks, and other furniture;

    (3.6.4)

5.  Repositioning telephones; (3.6.5)

6.  Adding raised markings on elevator control buttons; (3.6.6)

7.  Installing flashing alarm lights; (3.6.7)

8.  Widening doors; (3.6.8)

9.  Installing offset hinges to widen doorways; (3.6.9)

10. Eliminating a turnstile or providing an alternative accessible path; (3.6.10)

11.  Installing accessible door hardware; (3.6.11)

12.  Installing grab bars in toilet stalls; (3.6.12)

13.  Rearranging toilet partitions to increase maneuvering space; (3.6.13)

14.  Insulating lavatory pipes under sinks to prevent burns; (3.6.14)

15.  Installing a raised toilet seat; (3.6.15)

16.  Installing a full-length bathroom mirror; (3.6.16)

17.  Repositioning the paper towel dispenser in a bathroom; (3.6.17)

18.  Creating designated accessible parking spaces; (3.6.18)

19.  Installing an accessible paper cup dispenser at an existing inaccessible water fountain; (3.6.19)

20.  Removing high pile, low density carpeting; or (3.6.20)

21.  Installing vehicle hand controls. (3.6.21)

===================================================================

===================================================================

## B. Existing Facilities – Part B

Element-by-Element Safe Harbor

If your business facility was built or altered in the past 20 years in compliance with the 1991 Standards, or you removed barriers to specific elements in compliance with those Standards, you do not have to make further modifications to those elements—even if the new standards have different requirements for them—to comply with the 2010 Standards. This provision is applied on an element-by-element basis and is referred to as the "safe harbor." The following examples illustrate how the safe harbor applies:

1. The 2010 Standards lower the mounting height for light switches and thermostats from 54 inches to 48 inches. If your light switches are already installed at 54 inches in compliance with the 1991 Standards, you are not required to lower them to 48 inches.

2. The 1991 Standards require one van accessible space for every eight accessible spaces. The 2010 Standards require one van accessible space for every six accessible spaces. If you have complied with the 1991 Standards, you are not required to add additional van accessible spaces to meet the 2010 Standards.

3. The 2010 Standards contain new requirements for the input, numeric, and function keys .g. "enter," "clear," and "correct") on automatic teller machine (ATM) keypads. If an existing ATM complies with the 1991 Standards, no further modifications are required to the keypad.

If a business chooses to alter elements that were in compliance with the 1991 Standards, the safe harbor no longer applies to those elements. For example, if you restripe your parking lot, which is considered an alteration, you will now have to meet the ratio of van accessible spaces in the 2010 Standards. Similarly, if you relocate a fixed ATM, which is considered an alteration, you will now have to meet the keypad requirements in the 2010 Standards.

The revised ADA rules and the 2010 Standards contain new requirements for elements in existing facilities that were not addressed in the original 1991 Standards. These include recreation facilities such as swimming pools, play areas, exercise machines, miniature golf facilities, and bowling alleys. Because these elements were not included in the 1991 Standards, they are not subject to the safe harbor. Therefore, on or after March 15, 2012, public accommodations must remove architectural barriers to elements subject to the new requirements in the 2010 Standards when it is readily achievable to do so. For example, a hotel must determine whether it is readily achievable to make its swimming pool accessible to people with mobility disabilities by installing a lift or a ramp as specified in the 2010 Standards

COMPLIANCE DATES UPDATED
=====================================================================

=====================================================================


Compliance Dates and Applicable Standards for
Readily Achievable Barrier Removal, New Construction, and Alterations


| Compliance Date | Applicable Standard |
| --- | --- |
| Until March 15, 2012 | 1991 Standards or 2010 Standards |
| On or After March 15, 2012 | 2010 Standards |


Priorities for Barrier Removal

Understanding how customers arrive at and move through your business will go a long way in identifying existing barriers and setting priorities for their removal. Do people arrive on foot, by car, or by public transportation? Do you provide parking? How do customers enter and move about your business? The ADA regulations recommend the following priorities for barrier removal:

- Providing access to your business from public sidewalks, parking areas, and public transportation;
- Providing access to the goods and services your business offers;
- Providing access to public restrooms; and
- Removing barriers to other amenities offered to the public, such as drinking fountains.

## III. Methodology

=======================================================================

=======================================================================

This ADA survey uses the Methodology employed by the Americans With Disabilities Act (ADA) Accessibility Guidelines for Building and Facilities (ADAAG), part 36 Standards for Accessible Design.  An additional reference is Title III Non-Discrimination on the basis of Disability by the Public Accommodations and Commercial Facilities (ADA Handbook) and the Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities.

1.  Americans With Disabilities Act (ADA) Accessibility Guidelines for Building and Facilities ADAAG, part 36 Standards for Accessible Design;

2.  Americans With Disabilities Act, ADA Guide for Small Business, U.S. Small Business Administration Office of Entrepreneurial Development US Department of Justice Civil Rights Division;

3.  Title III Non-Discrimination On The Basis of Disability By Public Accommodations and In Commercial Facilities (ADA Handbook) and the Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities;

4.  The Legislative history of The Americans with Disabilities Act;

5.  The Americans with Disabilities Act Compliance Manual;

6.  Legal Rights of Persons with Disabilities: An Analysis of Federal Law;

7.  California Disabled Accessibility Guidebook 2000;

8.  California Title XXIV;

9.  The Americans with Disabilities Act Accessibility Guidelines Tech Sheet Series.

10. Accessible Rights-Of-Way; A Design Guide;

11. The Americans with Disabilities Act Title III Technical Assistance Manual;

12. California Accessibility Reference Manual 2nd Edition

13. California Accessibility Reference Manual 4th Edition

**AMERICANS WITH DISABILITIES ACT (ADA)**
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

IV    COPYRIGHT

Copyright Act of (1976)
Copyright Act (2001)

William Carter
DAOLIAM INTERNATIONAL
P. O. BOX 82765
SAN DIEGO, CA 92138-2765

All rights reserved.  As stated in the Copyright Act of 1976, no part of this document may be reproduced or distributed without the prior written permission of DAOLIAM INTERNATIONAL.

The materials for this Americans with Disabilities Accessibility Guideline (ADAAG) report were developed by DAOLIAM INTERNATIONAL. These materials may be reproduced for educational or training events provided by DAOLIAM INTERNATIONAL for the promotion of the Americans with Disabilities Act and Compliance of said act.

This report contains the professional opinions and ideas of its authors and is designed to provide useful advice to businesses interested in removing barriers that may interfere with the full inclusion of persons with disabilities.

Any Americans with Disabilities Act information disseminated on behalf of DAOLIAM INTERNATIONAL by way of training, seminars, written materials and individual consultations, is obtained from the US Department of Labor & the US Department of Justice, and sources are deemed reliable.  There is no reason to doubt its accuracy, but it is not guaranteed, and it is recommended that legal counsel with experience in the application of the ADA be consulted for specific circumstances.

Duplication and distribution of this material is strictly prohibited.

## V.  NO. VIOLATIONS

### TOTAL NUMBER OF VIOLATIONS

Seating – Dining, Banquet & Bar Facilities – (Fixed Seating)
(CA Title 24 1122B.1) (ADA 4.1.3(18))

Seating – Dining, Banquet & Bar Facilities – (Min Requirement 5%)
(CA Title 24 1122B.1) (ADA 4.1.3(18))

Seating – Dining, Banquet & Bar Facilities – (Clear Space 30" x 48" Min))
(CA Title 24 1118B.4.1) (ADA 4.2.4.1)

Seating – Dining, Banquet & Bar Facilities – (Knee Space 27"H, 30"W, 19"D)
(ADAAG 4.32.3 & CA Title 24 1122B.3)

Seating – Dining, Banquet & Bar Facilities – (Table Height 28"-34" )
(ADAAG 4.32.4 & CA Title 24 1122B.4)

Seating – Dining, Banquet & Bar Facilities – (Access Aisles Min Width 36" )
(CA Title 24 1122B.1) (ADA 4.1.3(18))

Seating – Dining, Banquet & Bar Facilities – (Equivalent Services & Décor @
Accessible Seating ), (ADAAG 5.4 & CA Title 24 1104B.5.4)

Seating – Dining, Banquet & Bar Facilities – (Accessible Seating Integrated  w/General
Seating)
(CA Title 24 1122B.1) (ADA 4.1.3(18))

Counters – Dining, Banquet & Bar Facilities – (Counter Height 28"-34" )
(ADA 4.32.4) (CA Title 24 1122B.4)

Counters – Dining, Banquet & Bar Facilities – (Knee Space 27"H, 30"W, 19"D)
(ADAAG 4.32..3 & 4 & CA Title 24 1122B.3)

Counters – Dining, Banquet & Bar Facilities – (Clear Floor Space 30" x 48" Min))
(ADAAG 4.2.4, 4.32.2 & CA Title 24 1122B.3)

Counters – Dining, Banquet & Bar Facilities – (Clear Space adjoins Accessible Route)
(ADAAG 4.2.4.2, 4.32.2 & CA Title 24 1122B.3)

Counters – (Counter Height 28"-34" )
(CA Title 24 1122B.4)

Counters  (Clear Space 36" Wide)
(CA Title 24 1122B.3 & .4)

Counters  (Clear Space 3o" x 48")
(CA Title 24 1188B.4.2) (ADA 4.2.4.2)

Counters  (Clear Space adjoins Accessible Route)
(CA Title 24 1122B.3 & .4)

Tableware & Condiments – Dining, Banquet & Bar Facilities – (w/in Reach Ranges)
(ADAAG 5.6 & CA Title 24 1104B.5.6)

Tableware & Condiments – Dining, Banquet & Bar Facilities – (Table Tops 28"-34")
(ADAAG 5.6 & CA Title 24 1104B.5.6)

Bathroom – Proper Directional Signage to Accessible Restroom
(CA Title 24 1117B.5.8.1.2)

Bathroom – International Symbol of Accessibility at Accessible Restroom
(ADA 4.30.6) (CA Title 24 1117B.5.7)

Bathroom – International Symbol of Accessibility - Pictogram Min 6" High
(ADA 4.30.6) (CA Title 24 1117B.5.7)

Bathroom – International Symbol of Accessibility – Verbal Description Below
(ADAAG 4.30.4 & CA Title 24 1117B.5.5.2)

Raised Braille Characters - (Restroom Wall Signage)
(ADAAG 4.30.4 & CA Title 24 1117B.5.6.1 & .2)

Wall Mount Signage (Latch Side of Door)
(ADAAG 4.1.2(7)(d) and CA Title 24 1117B.5.1.1 & .5.6.3)

Wall Mount Signage (60 inches from the floor)
(ADAAG 4.30.6 & CA Title 24 1117B.5.9)

Door Mount Signage (Men's & Women's)
(CA Title 24 1115B.5)

Door Signage (Color Distinctively Contrast w/Door Color)
(CA Title 24 1115B.5)

Accessories/Fixtures – Proper Height (Toilet Seat Covers)
(ADAAG 4.23.7 & CA Title 24 1115B.9.2)

**AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

Flush Valve – Correct Side
    (ADAAG 4.16.5 & CA Title 24 1502.0)

Stall Door (Opens Outward)
    (ADAAG 4.23.4 ADA 4.17.3 & CA Title 24 1115B.7.1.4)

Hardware – Handle Inside/Outside Compartment Door
    (ADA 4.13.9 & CA Title 24 1115B.3.1.4.5, 1115B.7.1.4)

## VI.   REPORT OF FINDINGS
========================================================================
A. Accessible Entry
B. Access to Goods and Services
C. Access to Restrooms
D. Any Other Measure Necessary
========================================================================

## FACILITY EVALUATION

The initial step in achieving compliance with Title III is to evaluate a facility and it's operations. All areas of the facility should be examined and evaluated as to accessibility.  This ADA Survey Report examines the following four principle elements:

1. ACCESSIBLE ENTRY;
2. ACCESS TO GOODS AND SERVICES;
3. ACCESS TO RESTROOMS;
4. ANY OTHER MEASURES NECESSARY.

## A.  ACCESSIBLE ENTRY

Accessible Entry: People with disabilities should be able to arrive on the site, approach the building, and enter the building as freely as everyone else.  At least one path of travel should be safe and accessible for everyone, including people with disabilities.

ADAAG 4.6.2 Location.  Accessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance. In parking facilities that do not serve a particular building, accessible parking shall be located on the shortest accessible route of travel to an accessible pedestrian entrance of the parking facility.  For a building with multiple accessible entrances with adjacent parking, accessible parking spaces shall be dispersed and located closest to the accessible entrances.

N/A

## A(2).   WALKS, CURBS & RAMPS

N/A

## A(3)   ENTRANCES, CORRIDORS & STAIRS

N/A

## B.    ACCESS TO GOODS & SERVICES

### DINING, BANQUET AND BAR FACILITIES

General Rule:  Dining, banquet and bar facilities shall be made accessible to persons with disabilities.  (ADAAG 5.1 & CA Title 24 1104B.5.1)

In NEW CONSTRUCTION, all dining areas, including raised or sunken dining areas, loggias, and outdoor seating areas, shall be accessible.  (ADAAG 5.4)  New Construction: *When the Last application for a building permit or permit extension for the facility is  (was) certified to be complete be a state, county, or local government BEFORE January 26, 1992.*

ACCESSIBILITY FOR EXISTING BUILDINGS  (Federal Register/Vol.56, No. 144/Friday, July 26, 1991 / Rules and Regulations (c) *To the maximum extent feasible.*  The phrase "to the maximum extent feasible," as used in this section, applies to the occasional case where the nature of an existing facility makes it virtually impossible to comply fully with applicable accessibility standards through a planned alteration.  In these circumstances, the alteration shall provide the maximum physical accessibility feasible.  Any altered features of the facility that can be made accessible shall be made accessible.  If providing accessibility in conformance with this section to individuals with certain disabilities (e.g., those who use wheelchairs) would not be feasible, the facility shall be made accessible to persons with other types of disabilities (e.g., those who use crutches, those who have impaired vision or hearing, or those who have other impairments).

New Construction and Alterations

The ADA requires that all new facilities built by public accommodations, including small businesses, must be accessible to and usable by people with disabilities.  The 2010 Standards lay out accessibility design requirements for newly constructed and altered public accommodations and commercial facilities.  Certain dates in the construction process determine which ADA standards—the 1991 Standards or the 2010 Standards—must be used.

If the last or final building permit application for a new construction or alterations project is certified before March 15, 2012, businesses may comply with either the 1991 or the 2010 Standards.  In jurisdictions where certification of permit applications is not required, businesses can also choose between the 1991 or 2010 Standards if their jurisdiction receives their permit application by March 15, 2012.  Businesses should refer to their local permitting process. Where no permits are required, businesses may comply with either the 1991 or 2010 Standards if physical construction starts before March 15, 2012.  Start of physical construction or alterations does not mean the date of ceremonial groundbreaking or the day demolition of an existing structure commences.  In this situation, if physical construction starts after March 15, 2012, the small business must use the 2010 Standards

DAOLIAM INTERNATIONAL

### FIXED, MOVABLE or BUILT-IN SEATING, TABLES AND COUNTERS

General Rule: Where a single counter contains more than one transaction station, such as (but not limited to) a bank counter with multiple teller windows or retail sales counter with multiple cash register stations, at least five percent (5%), but never less than one, of each type of station shall be located at a section of counter that is at least 36 inches long and no more than 28" – 34" high.

The failure to provide accessible tables (where tables are provided in Restaurants, Cafeterias, Snack Bars, and Vending Areas), is an ongoing one. Not only do moveable non-fixed furniture type tables have to meet the 5% requirement specified under Section 5 and Section 4.32, fixed tables also have to be accessible. It is not correct to assume that if moveable non-fixed furniture type tables are provided that meet the requirements of Section 4.32, that fixed tables do not have to comply. Both moveable AND fixed tables must meet the 5% requirement independently.

**Simply Stated: Every area where there is seating for Non-Disabled Persons, there MUST be seating for Disabled Persons. If there is seating on the inside of a facility for customers, there must be disabled seating on the inside of the facility for disabled customers. If there is seating on the outside of the facility for customers, there must be seating on the outside for disabled customers. There are no exceptions!**

Note: Tabletop support posts and their legs must not obstruct the knee clearance required under Section 4.32.



30" Required
32" Shown

Minimum 27" Required

30" Shown

This area must be clear of everything. You cannot have the base/legs of the table in this area. The wheels of the wheelchair will hit the base, preventing full access

SEATING AREA

AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

15

DAOLIAM INTERNATIONAL

\*   AREA OF CONCERN
      Is there enough seating for the disabled in this facility?

      ADAAG 5.1 & CA Title 24 1104B.5.4 Accessible Seating 5% Minimum
      At least 5%, but not less than one of the seating spaces in each functional area is accessible.



FINDINGS OF INVESTIGATION
      Here, there are no accessible seats for the disabled in this facility.

CONCLUSION - VIOLATION
      Since there are no accessible seats for the disabled in this facility, they are in violation.

\*      AREA OF CONCERN
        Is there enough clear space at the seating area for persons with disabilities in
this facility?

ADAAG 4.2.4.1 & CA Title 24 1122B.3 Clear Space 30" x 48" @ Disabled Seating Area
        Minimum 30" x 48" clear space is provided at the designated disabled Seating Area.



This area must be clear of
everything. You cannot have the
base/legs of the table in this area.
The wheels of the wheelchair, or
the disabled's feet, will hit the
base, preventing full access

FINDINGS OF INVESTIGATION
        Here, there is no clear space for the designated disabled in this facility.

CONCLUSION - VIOLATION
        Since there is no clear space for the designated disabled in this facility, they
are in violation.

**DAOLIAM INTERNATIONAL**

\*      AREA OF CONCERN
Is there enough knee space at the seating area for persons with disabilities in this facility?

ADAAG 4.32.3 & CA Title 24 1122B.3 Knee Space 27"H, 30"W, 19"D
Knee space at tables is at least 27" high, 30" wide and 19" deep.



FINDINGS OF INVESTIGATION
Here, there is no knee space for the designated disabled in this facility.

CONCLUSION - VIOLATION
Since there is no knee space for the designated disabled in this facility, they are in violation.

**AMERICANS WITH DISABILITIES ACT (ADA)**
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**            18

\*     AREA OF CONCERN
      Is the table area for persons with disabilities at the proper height in this facility?

ADAAG 4.32.4 & CA Title 24 1122B.4 Knee Space 27"H, 30"W, 19"D
      Knee space at tables is at least 27" high, 30" wide and 19" deep.



FINDINGS OF INVESTIGATION
      Here, there is no table designated for the disabled at this location.

CONCLUSION - VIOLATION
      Since there is no table designated for the disabled at this location, they are in
violation.

**DAOLIAM INTERNATIONAL**

\*      AREA OF CONCERN
Is there equivalent services and décor in the designated area for disabled persons within this section of the facility?

ADAAG 5.4 & CA Title 24 1104B.5.4 Equivalent Services & Décor @ Accessible Seating
Equivalent services and décor are provided at accessible seating spaces as for the general public.



All tables must look the SAME for both disabled and non-disabled customers

You can't have one style for regular customers and another style for disabled customers.

The table designated for the disabled persons MUST be in the same location as the other customers. This includes inside, outside, raised/sunken areas as well as counters.

You CANNOT put the disabled persons in the corner or by themselves or facing away from the other customers.

The disabled cannot be forced to sit at the end of a table, with their backs to the aisle, or sit in the aisle, in the path of traffic, while other customers sit facing each other.

FINDINGS OF INVESTIGATION
Here, there are no tables designated for the disabled as for the general public in this facility.

CONCLUSION - VIOLATION
Since there are no tables designated for the disabled as for the general public in this facility, they are in violation.

.

DAOLIAM INTERNATIONAL

\*    AREA OF CONCERN
        Is the accessible seating area integrated within the general seating area within this facility?

        ADAAG 5.4 & CA Title 24 1104B.5.4 Accessible Seating Integrated w/General Seating Area
        Accessible seating spaces are integrated with general seating and allow a reasonable selection of seating area and avoid having one area specifically highlighted as the area for persons with disabilities.

        FINDINGS OF INVESTIGATION
        Here, there are no tables designated for the disabled as for the general public in this facility.

        CONCLUSION - VIOLATION
        Since there are no tables designated for the disabled as for the general public in this facility, they are in violation.

DAOLIAM INTERNATIONAL

<u>COUNTER AREA</u>

*        AREA OF CONCERN
         Is the top of the counter in the accessible seating area at the proper height within this facility?

         ADAAG 4.23.3 & CA Title 24 1122B.4 Counter Height 28"-34"
         In accessible seating areas the counter top height is between 28" – 34" above the finish floor.



         FINDINGS OF INVESTIGATION
         Here, the accessible seating areas the counter top height is not between 28" – 34" above the finish floor in this facility.

         CONCLUSION - VIOLATION
         Since the accessible seating areas the counter top height is not between 28" – 34" above the finish floor in this facility, they are in violation.

**AMERICANS WITH DISABILITIES ACT (ADA)**
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**                                    22

\*       AREA OF CONCERN
          Is there enough knee clearance under the counter in the accessible seating area within this facility?

ADAAG 4.32.4 & CA Title 24 1122B.3 Knee Clearance 27"H, 30"W, 19"D
          In accessible seating areas the knee clearance is a minimum 27" high, 30" wide and 19" deep.



FINDINGS OF INVESTIGATION
          Here, the knee clearance in the accessible seating area is not above the minimum 27" high, 30" wide and 19" deep in this facility.

CONCLUSION - VIOLATION
          Since the knee clearance in the accessible seating area is not above the minimum 27" high, 30" wide and 19" deep in this facility, they are in violation

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
          Is there enough clear floor space under the counter in the accessible seating area within this facility?

          ADAAG 4.2.4 & CA Title 24 1122B.3 Clear Floor Space 30" x 48"
          In accessible seating areas the clear floor space is a minimum of 30" x 48".



          FINDINGS OF INVESTIGATION
          Here, the clear floor space in the accessible seating area is not above the minimum 30" x 48" in this facility.

          CONCLUSION - VIOLATION
          Since the clear floor space in the accessible seating area is not above the minimum 30" x 48" in this facility, they are in violation.

\*      AREA OF CONCERN
Is there enough clear floor space adjoining an accessible route from the counter in the accessible seating area within this facility?

ADAAG 4.2.4.2 & CA Title 24 1122B.3 Clear Space Adjoins Accessible Route
In accessible seating area a clear floor space adjoins an accessible route.

FINDINGS OF INVESTIGATION
Here, there is not a clear floor space adjoining an accessible route in this facility.

CONCLUSION - VIOLATION
Since there is not a clear floor space adjoining an accessible route in this facility, they are in violation.


C.      ACCESS TO RESTROOMS

C(1).  Public Restrooms

IDENTIFICATION SYMBOLS (for Sanitary Facilities)

Special Note: Sanitary facilities are required to provide (2) Two separate types of signage; (1) one type located on the doorway to the facility, and another type mounted on the wall adjacent to the latch side of the door.

Special Note:  Where there is no wall space on the latch side, including at double leaf doors, signs shall be placed on the nearest adjacent wall, preferably on the right.  California Title 24 Section 1117B.5.9 and ADAAG Section 4.30.6

ADAAG 4.1.3(11) & CA Title 24 1115B.1 (Restroom Facilities General Requirement)
When sanitary facilities are provided that serve buildings, facilities or portions of buildings or facilities that are required to be accessible, then each such sanitary facility shall be accessible to persons with disabilities.

CA Title 24 1115B.2 Separate Facilities
Where separate facilities are provided for non-disabled persons of each sex, separate facilities shall be provided for persons with disabilities of each sex also.  Where unisex facilities are provided for persons without disabilities, at least one unisex facility shall be provided for persons with disabilities within close proximity to the non-accessible facility.

\*     AREA OF CONCERN
        Does the bathroom/restroom have the proper signage, which provides direction to or information about access to its facilities?

ADAAG Building Signage.  Signs which designate permanent rooms and spaces, shall comply with 4.30.1, 4.30.4, 4.30.5, and 4.30.6.  Other signs which provide direction to, or information about, functional spaces of the building shall comply with 4.30.1, 4.30.2, 4.30.3, and 4.30.5.  Elements and spaces of accessible facilities which shall be identified by the International Symbol of Accessibility and which shall comply with 4.30.7 are:
(a)    Parking Spaces designated as reserved for individuals with disabilities;
(b)    Accessible Passenger Loading Zones;
(c)    Accessible Entrances when not all are accessible, (inaccessible entrances shall have directional signage to indicate the route to the nearest accessible entrance);
(d)    Accessible Toilet and Bathing Facilities when not all are accessible.

CA TITLE 24 SECTION 1117B.5.1.1.1 & .5.6.3
        The international symbol of accessibility is installed on the wall adjacent to the latch side of the door.  The border dimension of this pictogram shall be a minimum of 6 inches in height.

FINDINGS OF INVESTIGATION
        Here, there are NO such signs anywhere.

CONCLUSION – VIOLATION
        By NOT having any signage in the building which provided direction to or information about access to any facilities which could be used by persons with disabilities, they are in violation

\*     AREA OF CONCERN
        Are the restroom international symbol of accessibility signs centered on the wall correctly?

ADAAG 4.30.6 & California Title 24 Section 1117B.5.9 Mounting Location and Height. Where permanent identification is provided for rooms and spaces, signs shall be insulated on the wall adjacent to the latch side of the door.  Where there is no wall space to the latch side of the door, including at double leaf doors, signs shall be placed on the nearest adjacent wall. Mounting height shall be 60 inches (125 mm) above the finish floor to the centerline of the sign.  Mounting location for such signage shall be so that a person may approach within 3 inches (76 mm) of signage without encountering protruding objects or standing within the swing of a door.





FINDINGS OF INVESTIGATION
There are NO signs centered on the wall that are 60 inched from the floor that meet this requirement.

CONCLUSION – VIOLATION
Since there are NO such signs on the wall that are 60 inches from the floor that meet the above requirement, they are in violation of the above mentioned section.

**AMERICANS WITH DISABILITIES ACT (ADA)**
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

27

\*  AREA OF CONCERN
     Does the facility have wall mounted signage located on the latch side of the door?

ADAAG 4.1.2(7)(d) & CA Title 24 1117B.5.1.1 & .5.6.3 (Wall Mount Signage)
     The international symbol of accessibility is installed on the wall adjacent to the latch side of the door.
     *NOTE: Where there is no wall space on the latch side, including at double leaf doors, signs shall be placed on the nearest adjacent wall, preferably on the right.  ADAAG 4.30.6 & CA Title 24 1117B.5.9.*

FINDINGS OF INVESTIGATION
     There are NO signs on the walls of this facility.

CONCLUSION - VIOLATION
     Since there are NO signs on the walls, they are in violation.

\*      AREA OF CONCERN
          Is the door mounted signage proper and correct?

      CA Title 24 1115B.5 (Door Mount Signage)
          Men's – Equilateral triangle ¼ inch thick with edges 12 inch long and a vertex
pointing upward.
          Women's – 12 inch diameter circle ¼ inch thick.

      FINDINGS OF INVESTIGATION
          Here, the signs do not meet the above requirement, because there are no signs.

      CONCLUSION – VIOLATION
          Since there are no signs, they are in violation.

\*      AREA OF CONCERN
          Does the color of the current bathroom signage distinctively contrast with the
color of the door?

      CA Title 24 1115B.5 (Color Distinctively Contrast w/Door Color)
          The color and contrast of the sign distinctively contrasts with the color and
contrast of the door.

      FINDINGS OF INVESTIGATION
          Here, the color of the door does NOT distinctively contrast with the color of the
sign, because there is no sign.

      CONCLUSION - VIOLATION
          Since there is no sign, they are in violation.

\*      AREA OF CONCERN
Is there a sign on the latch side of the door that is accompanied by Grade 2 Braille for persons with disabilities, sight impaired persons.

(CA Title 24 1117B.5.5.1) (ADA 4.30.4) (Raised Braille- Bathroom Signage)
Raised and Braille Characters and pictorial Symbol Signs. (Pictograms):  Letters and numerals shall be raised 1/32 inches, upper case, sans serif or simple serif type and shall be accompanied with Grade 2 Braille.  Raised characters shall be at least 5/8 inches (16 mm) high, but no higher than 2 inches (50 mm).

FINDINGS OF INVESTIGATION
Here, there are NO signs with the above referenced characteristics.

CONCLUSION – VIOLATION
Since there are NO signs at this location with the proper characteristics listed above, they are in violation.

DAOLIAM INTERNATIONAL

## ACCESSORIES IN SANITARY FACILITIES

\*      AREA OF CONCERN
        Are the operable parts  (including coin slots) of all fixtures or accessories located at the proper heights.

        ADAAG 4.23.7 & CA Title 24 1115B.9.2
        Operable parts (including coin slots) of all fixtures or accessories are located a maximum or 40 inches above floor (i.e. soap dispensers, towels, toilet seat covers, auto-dryers, sanitary napkin dispensers, waste receptacles, etc.).



Reach Ranges for Dispensers/Receptacles

\*      AREA OF CONCERN
Are the operable parts  (including coin slots) of all fixtures or accessories located at the proper heights.

ADAAG 4.23.7 & CA Title 24 1115B.9.2
Operable parts (including coin slots) of all fixtures or accessories are located a maximum or 40 inches above floor (i.e. soap dispensers, towels, toilet seat covers, auto-dryers, sanitary napkin dispensers, waste receptacles, etc.).

FINDINGS OF INVESTIGATION
Here, the toilet seat covers are 65 inches above the floor.

CONCLUSION – VIOLATION
Since the toilet seat covers are 65 inches above the floor, it is in violation of this section.

DAOLIAM INTERNATIONAL

\*   AREA OF CONCERN
What is the correct side to place the flush valve?

ADAAG 4.16.5 & CA Title 24 1502.0 Flush Valve – Correct Side
The flush valve is on wide side of toilet area.



EQUIVALENT FACILITATION FOR
EXISTING BUILDINGS ONLY

FINDINGS OF INVESTIGATION
Here, the flush valve is on the narrow side of the toilet area.

CONCLUSION – VIOLATION
Since the flush valve is on the narrow side of the toilet area, they are in violation.

AMERICANS WITH DISABILITIES ACT (ADA)                    33
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

**DAOLIAM INTERNATIONAL**

\*       AREA OF CONCERN
        How far from the side wall corner should the water closet be mounted/located?

        ADAAG 4.17.3 & CA Title 24 1115B.7.1.2 Water Closet Mounting/Location – Corner
Wall
        There should be 18 inches between the center of the water closet to the side wall
corner.



EQUIVALENT FACILITATION FOR
EXISTING BUILDINGS ONLY

FINDINGS OF INVESTIGATION
        Here, there is 24 inches between the center of the water closet to the side wall
corner.

        CONCLUSION – VIOLATION
        Since there is 24 inches between the center of the water closet to the side wall
corner, they are in violation.

**AMERICANS WITH DISABILITIES ACT (ADA)**                    34
**ACCESSIBILITY SURVEY FOR A TITLE III ENTITY**

DAOLIAM INTERNATIONAL

\*     AREA OF CONCERN
       Which direction should the stall door swing?

    ADAAG 4.23.4 ADA 4.17.3 & CA Title 24 1115B.7.1.4 (Outward Swinging Door)
       The door shall be an outward swinging, self-closing door.



X=66" MINIMUM WITH WALL—MOUNTED WATER CLOSET

X=69" MINIMUM WITH FLOOR—MOUNTED WATER CLOSET

NOTE: TOTAL REQUIRED STALL LENGTH MUST INCORPORATE MINIMUM REQUIRED 48" CLEAR SPACE IN FRONT OF WATER CLOSET.

FINDINGS OF INVESTIGATION
       Here, the door swings inward.

CONCLUSION – VIOLATION
       Since the door does NOT swing outward, they are in violation.

AMERICANS WITH DISABILITIES ACT (ADA)
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

35

DAOLIAM INTERNATIONAL

\*      AREA OF CONCERN
        Should there be a handle on both sides of the toilet stall compartment door?

        ADAAG 4.13.9 & CA Title 24 1115B.7.1.4 Handles Inside/Outside Compartment Door
        Inside and outside of the compartment door is equipped with a loop of U-Shaped
handle immediately below the latch.  The latch is a flip-over  style, sliding, or other hardware
not requiring tight grasping of twisting.



LOOP OR U-SHAPED
HANDLE ON DOOR —

U-SHAPED HANDLE                    LOOP HANDLE

FINDINGS OF INVESTIGATION
        Here, there are not handles on both sides of the designated disabled toilet stall
compartment door.

CONCLUSION – VIOLATION
        Since there are not handles on both sides of the designated disabled toilet stall
compartment door, they are in violation

AMERICANS WITH DISABILITIES ACT (ADA)                                    36
ACCESSIBILITY SURVEY FOR A TITLE III ENTITY

D.    ANY OTHER MEASURES NECESSARY

D(1)  PUBLIC TELEPHONES & WATER FOUNTAINS

   N/A

D(2).  HAZARDS & EMERGENCY PROCEDURES

   N/A

D(3)  CONTROLS & OPERATING MECHANISMS, VENDING MACHINES, AUTOMATED TELLER MACHINES AND POINT OF SALE MACHINES

   N/A

D(4).  ELEVATORS

   N/A

VII.  PRIOR HISTORY OF ADA COMPLAINTS/LITIGATION

   None

VIII.  LIST OF BUSINESSES IN NON-COMPLIANCE

   The following business/tenants are located within facility surveyed and therefore in non-compliance with respect to the AMERICAN DISABILITY ACT, ADA ACCESSIBLE GUIDELINES:

ADAAG SURVEY OF:    DUBLIN SQUARE IRISH PUB AND GRILL
                    554 4TH AVENUE
                    SAN DEIGO, CA 92101



















